**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| KELLY M. CRAWFORD, as the Receiver for Mark Rice, et al. | § § § § |
| Plaintiff, | § § |
| v. | §  CIVIL ACTION NO. _____ |
| | § |
| RALPH MCLEAN VAN CLEAVE, PABLO BONJOUR, LADY CARLYON COATES, CATHY COATES, TIMOTHY MCADAMS, VINCENT GREG NOLAN, RUSSELL RICHMAN, FRANCESCA RICE, and TIM RICE, | § § § § § § § |
| Defendants. | § § § |

## ORIGINAL COMPLAINT

Kelly M. Crawford, in his capacity as the court-appointed Receiver for Mark Rice and Financial Robotics, Inc. ("FinRob"), Aztec Oil, Inc. ("Aztec"), Corporate Services, Inc. ("Corporate Services"), Bison Holdings, Inc. ("Bison"), Commodity Futures and Options Services, Inc. ("CFOS"), Deposit Capital, Inc. ("Deposit Capital"), Global One Real Estate, Inc. ("Global One"), Hondo, Inc. ("Hondo"), Lanxide Corporation, Inc. ("Lanxide"), Nemaha, Inc. ("Nemaha"), Sparen, Inc. ("Sparen"), Sparen Holdings, Inc. ("Sparen Holdings"), Sparen FX, S.A. ("Sparen FX"), and Texana, Inc. ("Texana") (collectively, the "Receivership Entities") files this Original Complaint against Ralph McClean Van Cleave, Pablo Bonjour, Lady Carlyon Coates, Cathy Coates, Timothy McAdams, Vincent Greg Nolan, Russell Richman, Francesca Rice, and Tim Rice (collectively, "Defendants"). In support, the Receiver respectfully shows the Court the following:

# I.
# Parties

1. Plaintiff Kelly M. Crawford, Receiver ("Receiver") is an individual who resides in the State of Texas.

2. Defendant Ralph McClean Van Cleave is an individual who may be served with process by serving him at 1115 Dorothy Street, Houston, Texas 77008 or wherever else he may be found.

3. Defendant Pablo Bonjour is an individual who may be served with process by serving him at 21634 Park Tree Lane, Houston, Texas 77450.

4. Defendant Lady Carlyon Coates is an individual who may be served with process by serving her at 519 Bay Villas Lane, Naples, Florida 34108 or wherever else she may be found. On information and belief, she is the mother of Richard Coates, a business associate and friend of Mark Rice.

5. Defendant Cathy Coates is an individual who may be served with process by serving her at 519 Bay Villas Lane, Naples, Florida 34108 or wherever else she may be found. On information and belief, she is the former wife of Richard Coates, a business associate and friend of Mark Rice.

6. Defendant Timothy McAdams is an individual who may be served with process by serving him at 1900 Rawhide Drive, Apt. A, Round Rock, Texas 78681-6910 or wherever else he may be found.

7. Defendant Vincent Greg Nolan is an individual who may be served with process by serving him at 6000 Reims Road, Apt. 2206, Houston, Texas 77036 or wherever else he may be found.

8. Defendant Russell Richman is an individual who may be served with process by serving him at 12303 Huntington Field Drive, Houston, Texas 77099 or wherever else he may be found.

9. Defendant Francesca Rice is an individual who may be served with process by serving her at 142 N. Keswick Court, Sugarland, TX 77478-3974 or wherever else she may be found. She is the wife of Mark Rice.

10. Defendant Tim Rice is an individual who may be served with process by serving him at 957 Nasa Parkway, Suite 312, Houston, Texas 77058 or wherever else he may be found. He is the brother of Mark Rice.

## II.
## Jurisdiction and Venue

11. The court has continuing subject matter ancillary federal jurisdiction pursuant to 28 U.S.C. § 1331 and the June 30, 2011 Order pursuant to which the Receiver was appointed, ("Receivership Order") issued in Civil Action No. 4:11-cv-02446, *U.S. Commodity Futures Trading Commission v. Financial Robotics, Inc., et al.* in the United States District Court for the Southern District of Texas (the "Underlying Lawsuit"). Pursuant to the Receivership Order,[1] the Receiver has exclusive custody and control over all Receivership Assets, which include all claims owned by the Receivership Entities subject to the Receivership Order. This lawsuit is filed pursuant to the Receiver's execution of his duties as defined in the Receivership Order to recover funds owed to the Receivership Entities, and accordingly, ancillary jurisdiction exists regardless of amount in controversy, diversity, or any other factor.[2]

---

[1] A true and correct copy of the *Order Granting Plaintiff's Ex Parte Motion for Statutory Restraining Order, Expedited Discovery, Accounting, order to Show Cause Re: Preliminary Injunction and Other Equitable Relief (the* "Receivership Order") is attached as **Exhibit A** and is incorporated by reference.

[2] *Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010).

**ORIGINAL COMPLAINT**                                                                                             **Page 3**

12. Further, the Court has subject matter jurisdiction and personal jurisdiction over each of the Defendants pursuant to 28 U.S.C. § 1692 and 28 U.S.C. § 754. Each of the Defendants is a citizen of the United States and/or resides in the United States.

13. Venue in this District is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events and omissions giving rise to the claim occurred in Houston, Texas. Moreover, because ancillary jurisdiction exists, ancillary venue also exists.[3]

### III.
### Conditions Precedent

14. All conditions precedent to the filing of this Original Complaint have been performed or have occurred.

### IV.
### Background Facts

15. As set forth in the Commission's Amended Complaint in the Underlying Lawsuit,[4] beginning not later than 2007, Mark E. Rice, acting directly or through agents, fraudulently solicited approximately $10.4 million from Robert P. Copeland ("Copeland") for the purpose of trading managed accounts and/or a pooled investment operated by Rice in margined or leveraged foreign currency trades.

16. During the course of the Underlying Lawsuit, the Receiver obtained bank records indicating that at least $2.4 million of Copeland's investment funds were conveyed to various Rice controlled entities that are now Receivership Entities, including Bison Holdings, CFOS, Corporate Services, Deposit Capital, InventBay, Lanxide, Nemaha, and Texana. U232 was an

---

[3] *SEC v. Bilzerian*, 378 F.3d 1100, 1107 (D.C. Cir. 2004).

[4] The Receiver hereby incorporates by reference all of the factual allegations in the Commission's Amended Complaint in the Underlying Lawsuit. For convenience, a true and correct copy of the Commission's Amended Complaint is attached as **Exhibit B**.

entity also owned and controlled by Mark Rice that received and misappropriated Copeland's monies.

17. Copeland's investment funds were not entirely used for trading, but instead the foregoing entities distributed to each of the Defendants at least $224,358.59 of Copeland's monies as follows:

**Ralph McClean Van Cleave received at least $75,494.25:**

$2,000.00 from FinRob on or about August 3, 2007;
$4,000.00 from FinRob on or about September 5, 2007;
$4,000.00 from FinRob on or about September 28, 2007;
$4,000.00 from FinRob on or about December 8, 2007;
$4,000.00 from FinRob on or about January 18, 2008;
$4,000.00 from FinRob on or about March 5, 2008;
$7,500.00 from FinRob on or about March 13, 2008;
$4,000.00 from FinRob on or about March 20, 2008;
$6,000.00 from FinRob on or about April 15, 2008;
$5,000.00 from FinRob on or about May 16, 2008;
$5,000.00 from FinRob on or about June 13, 2008;
$5,000.00 from FinRob on or about August 1, 2008;
$1,353.77 from FinRob on or about August 15, 2008;
$5,000.00 from FinRob on or about August 29, 2008;
$1,485.01 from FinRob on or about September 9, 2008;
$5,000.00 from FinRob on or about November 3, 2008;
$5,831.87 from Nemaha on or about July 15, 2008;
$1,019.80 from Nemaha on or about July 22, 2008;
$1,303.80 from Nemaha on or about August 6, 2008;

**Pablo Bonjour received at least $76,915.34:**

$10,000.00 from Corporate Services on or about May 2, 2008;
$10,000.00 from Corporate Services on or about June 2, 2008;
$10,000.00 from Corporate Services on or about July 2, 2008;
$7,321.00 from Corporate Services on or about July 2, 2008;
$1,023.34 from Corporate Services on or about July 2, 2008;
$10,000.00 from Corporate Services on or about August 4, 2008;
$7,321.00 from Corporate Services on or about September 2, 2008;
$6,250.00 from Corporate Services on or about November 3, 2008;
$5,000.00 from Nemaha on or about March 6, 2008;
$10,000.00 from Nemaha on or about April 3, 2008;

**Cathy Coates received at least $3,400:**

$1,400.00 from Nemaha on or about February 29, 2008;
$2,000 from U232, Inc. on or about June 9, 2008;

**Timothy McAdams received at least $17,500:**

$2,500.00 from FinRob on or about March 17, 2008;
$3,000.00 from FinRob on or about May 12, 2008;
$3,000.00 from FinRob on or about July 28, 2008;
$3,000.00 from FinRob on or about August 27, 2008;
$3,000.00 from FinRob on or about September 19, 2008;
$3,000.00 from Corporate Services on or about June 23, 2008;

**Vincent Greg Nolan received at least $30,000:**

$2,000.00 from FinRob on or about July 11, 2008;
$2,000.00 from FinRob on or about September 12, 2008;
$5,000.00 from Corporate Services on or about May 5, 2008;
$5,000.00 from Corporate Services on or about June 3, 2008;
$5,000.00 from Corporate Services on or about August 4, 2008;
$5,000.00 from Corporate Services on or about September 3, 2008;
$5,000.00 from Corporate Services on or about November 4, 2008;
$5,000.00 from Nemaha on or about April 3, 2008;

**Russell Richman received at least $13,249:**

$5,000.00 from Corporate Services on or about July 11, 2008;
$2,500.00 from Corporate Services on or about August 4, 2008;
$2,500.00 from Corporate Services on or about September 4, 2008;
$2,500.00 from Corporate Services on or about November 4, 2008;
$749.00 from Corporate Services on or about November 4, 2008;

**Tim Rice received at least $7,800:**

$4,000.00 from Nemaha on or about August 5, 2008;
$3,800.00 from U232 on or about July 16, 2008;

18. The Receivership Entities and U232, which made the transfers of Copeland Funds to the persons listed above, did not provide Copeland reasonably equivalent value in exchange for the monies received, and in fact received the monies in bad faith for the fraudulent purpose of misusing Copeland's monies. Moreover, the persons listed above who received the transfers at

issue did not provide the entities or Copeland with reasonably equivalent value in exchange for the monies received. In addition, the monies were received by the persons at a time when the respective transferring entities were insolvent. Indeed, the entities which made the transfers to each of the Defendants listed above were controlled by Rice; were insolvent at the time of the transfers; were being used by Rice to hide Copeland's monies; were not performing a lawful legitimate service; and the transfers were made for the fraudulent purpose of having the recipients of the funds assist Mark Rice in his fraudulent activities. Specifically, FinRob did not use the Copeland monies as represented, but instead received the Copeland monies, traded some of the monies, and distributed a significant portion of the monies to different persons and entities without the consent of Copeland. FinRob misused Copeland's monies. Corporate Services was used to perpetrate unlawful credit card fraud in the name of "credit building", without any benefit to Copeland. Nemaha and U232 were used simply to receive and distribute Copeland monies, but failed to perform any services for Copeland's benefit, or in exchange for the funds it received from Copeland.

19. The Receivership Order places the assets of Mark Rice and the Receivership Entities in receivership without regard to whether the assets were acquired with Copeland's monies. As such, the Receiver has standing to recover fraudulent transfers of assets made by Mark Rice or the Receivership Entities. As part of his investigation the Receiver obtained evidence indicating that Mark Rice and the Receivership Entities made the following fraudulent transfers of at least $41,653 to certain family and friends as set forth below, without the exchange of reasonably equivalent value and at a time when the transferring entity was insolvent:

**Francesca Rice received at least $10,248:**

$1,000 from Texana on or about July 3, 2006;
$1,000 from Texana on or about August 24, 2006;

$1,000 from Texana on or about September 27, 2006;
$2,000 from Texana on or about December 8, 2006;
$1,000 from Texana on or about December 30, 2006;
$1,200 from Lanxide on or about June 17, 2010;
$1,200 from Lanxide on or about August 27, 2010;
$1,348 from Aztec on or about September 10, 2010;
$500 from Aztec on or about January 17, 2011;

**Tim Rice received at least $7,200:**

$4,200 from Nemaha on or about October 1, 2007;
$3,000 from Bison on or about November 1, 2007;

**Lady Carlyon ("Caroline") Coates received at least $4,800:**

$2,400 from Texana on or about March 4, 2009;
$1,200 from Lanxide on or about June 15, 2009;
$1,200 from Lanxide on or about April 10, 2009;

**Cathy Coates received at least $19,405:**

$1,200 from Texana on or about April 3, 2006;
$1,300 from Texana on or about July 24, 2006;
$1,100 from Texana on or about August 24, 2006;
$1,100 from Texana on or about September 28, 2006;
$1,200 from Texana on or about October 30, 2006;
$1,200 from Lanxide on or about November 27, 2006;
$1,100 from Texana on or about December 27, 2006;
$1,100 from Texana on or about January 29, 2007;
$1,200 from Lanxide on or about February 28, 2007;
$1,100 from Lanxide on or about August 1, 2007;
$1,200 from Lanxide on or about January 31, 2008;
$2,000 from Lanxide on or about May 31, 2008;
$1,000 from Lanxide on or about June 16, 2008;
$1,200 from Lanxide on or about July 1, 2008;
$1,200 from Texana on or about December 4, 2008;
$1,205 from Lanxide on or about December 15, 2008

20.  The payments made to each of the Defendants are Receivership Assets,[5] which the Receiver is entitled to recover on behalf of the Receivership Entities.

---

[5] The Receivership Order places the Defendants' assets in receivership under the control of the Receiver, and the Receivership Order defines "Defendants' Assets" as "any legal or equitable interest in, right to, or claim to … any real or personal property, including, but not limited to: chattels, goods, … general intangibles…" *Receivership Order, ¶ 12*. The Receiver incorporates by reference the relevant provisions of the Receivership Order in the

21. At all times prior to the Receiver's appointment, the Receivership Entities were subject to the full, complete and exclusive domination and control of Mark Rice or his agents, who operated the Receivership Entities solely for their own benefit, rather than in the interests of any Receivership Entity..

22. Further, the transfers the Receiver seeks to recover herein were fraudulently concealed by Rice. Rice used the complex web of the Receivership Entities to conceal and protect the transfers the Receiver seeks to recover. Additionally, Rice has persistently failed and refused to produce bank records related to the transfers at issue, and the Receiver's discovery of the subject transfers were made following the Receiver's appointment, and solely as a result of his diligence. The Receiver has subpoenaed records from multiple banks and financial institutions, and received records from Rice, prior to and following Rice's incarceration for contempt of court with regard to Rice's obligations under the SRO, including but not limited to Rice's obligation to produce records which disclosed the subject transfers.

23. Moreover, the transfers were inherently difficult to discover, but objectively verifiable. As a result of the extremely complex and voluminous banking transactions related to tracing Copeland's funds and Rice's operation of the multiple Receivership Entities, and despite the exercise of reasonable diligence, the Receiver's claims were not discovered until very recently. Indeed, further investigation into Rice's fraudulent operation of the Receivership Entities continues. As a result of the fraudulent concealment and equitable tolling arising from the inherently undiscoverable nature of these claims, the Receiver's claims asserted below did not accrue during the period that the Receivership Entities were dominated by Rice

---

Underlying Lawsuit. "Defendants' Assets" as defined in the Receivership Order, and which this Court included in the receivership estate, are referenced above as "Receivership Assets."

**ORIGINAL COMPLAINT**

## V.

## CLAIMS FOR RELIEF

**A.     FRAUDULENT TRANSFER**

24.     The Receiver alleges and hereby incorporates by reference each and every factual allegation made above as if each were separately set forth herein.

25.     Beginning in 2007 and continuing until 2011, one or more of the Receivership Entities, at the direction and under the control of Mark Rice, transferred Robert Copeland's investment funds totaling not less than $242,358.59 to certain of the Defendants as set forth above.  Each of these transfers was fraudulent as to the Receivership Entities and their creditors pursuant to the Uniform Fraudulent Transfer Act.  Because the Copeland funds were being misappropriated by and through the Receivership Entities, the transfers of the Copeland funds to the defendants set forth above were by their nature part of a fraudulent enterprise from inception such that each transfer was fraudulent as a matter of law, and was willful and malicious and made with actual intent to defraud.  The defendants identified above who received the fraudulent transfers did not provide reasonably equivalent value in exchange for the transfers.

26.     In addition, Mark Rice and the Receivership Entities transferred at least $41,653 in monies to certain family and friends of Rice without the exchange of reasonably equivalent value and at a time when the respective transferring entity was insolvent.  Mr. Rice and the Receivership Entities made the transfers to each of the identified defendants with willful, malicious and actual intent to defraud Mr. Rice's creditors as part of a fraudulent enterprise such that each transfer was fraudulent as a matter of law.  The defendants identified above who

received the transfers knew they were not providing reasonably equivalent value in exchange for the transfers.

27. Each of the transfers from the Receivership Entities and U232 to the Defendants should be set aside and the Defendants should be ordered to disgorge to the Receiver such funds in compliance with this Court's orders, and the Uniform Fraudulent Transfer Act, Tex. Bus. & Comm. Code § 24.001 et seq. To the extent the funds have been used to acquire real or personal property that any Defendant claims an interest in, such interests should be set aside.

28. Finally, pursuant to Tex. Bus. & Comm. Code § 24.013, the Receiver seeks the recovery of his attorney's fees.

## B. UNJUST ENRICHMENT

29. The Receiver alleges and hereby incorporates by reference each and every factual allegation made above as if each were separately set forth herein.

30. The Defendants have each been unjustly enriched by the amount of funds each received from the Receivership Entities and U232 in exchange for no reasonably equivalent value, and the Receiver has a superior equitable interest to recover the payments received by Defendants from the Receivership Entities and U232.

## C. REQUEST FOR AN ACCOUNTING

31. The Receiver alleges and hereby incorporates by reference each and every factual allegation made above as if each were separately set forth herein.

32. The Defendants are in wrongful possession of substantial monies paid to them by the Receivership Entities, which was obtained by the Receivership Entities through fraudulent and misleading means. Pursuant to the terms of the Receivership Order, the Receiver is entitled

**ORIGINAL COMPLAINT** Page 11

to an accounting from each of the Defendants identifying the total amount of monies received from the Receivership Entities, the location of the funds, the persons or entities with control over the funds, and the location of any assets purchased with the funds.

33. The Receiver requests the Court to enter an Order compelling the Defendants to file with the Court and serve upon the Receiver an accounting, under oath, detailing all of their assets and all of their funds and other assets received from Mark Rice and the Receivership Entities.

### D. MONEY HAD AND RECEIVED

34. The Receiver alleges and hereby incorporates by reference each and every factual allegation made above as if each were separately set forth below.

35. In the alternative, and without waiver of the foregoing, each of the Defendants received money or valuable property from the Receivership Entities and in equity and good conscience, the money or property each received belongs to the receivership estate for the further benefit of Robert Copeland (his investors), the defrauded investor and creditor of the estate. The Receiver hereby sues for the recovery of all money and property had and received by the Defendants, together with all pre- and post-judgment interest as allowed by law.

### E. ATTORNEY'S FEES

36. The Receiver seeks the recovery of all reasonable attorney's fees and expenses incurred in obtaining judgment against each of the Defendants, as allowed by law or in equity, and those attorney's fees and expenses required to pursue any appeal.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Receiver, Kelly M. Crawford respectfully prays that this Court order disgorgement or alternatively award the Receiver judgment against the Defendants in an amount to be determined through discovery, plus prejudgment and post judgment interest, attorneys' fees, expenses, and court costs; and that the Court grant such other and further relief as prayed for herein, both at law and in equity, to which he may show himself justly entitled.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By: */s/ Charlene C. Koonce*
Charlene C. Koonce
State Bar No. 11672850

500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: (214) 706-4200
Telecopier: (214) 706-4242

**ATTORNEYS FOR RECEIVER
KELLY M. CRAWFORD**